

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CSX TRANSPORTATION, INC.,

                Plaintiff,

-against-

FILCO CARTING CORP.,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-1055 (NGG) (JMA)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff CSX Transportation Inc. ("CSX") brings this action against Defendant Filco Carting Corp. ("Filco") to enforce a July 10, 2009 judgment obtained against Filco's alleged alter ego, stemming from the alter ego's breach of its contract with CSX. (Compl. (Docket Entry # 1).) Filco moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. (Docket Entry # 12).) For the reasons set forth below, the court grants Filco's motion.

## I. LEGAL STANDARD

In reviewing a motion to dismiss, the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 555 U.S. 544, 570 (2007)). The complaint must set forth factual allegations that are sufficient "to raise a right to relief above the speculative level." Twombly, 555 U.S. at 555.

1

## II. BACKGROUND

In 2005, CSX, an interstate rail carrier, contracted with Meserole Street Recycling ("Meserole"), a New York recycling services company, to ship 194 railcars worth of post-consumer recyclable material, such as recycled office paper, to Manistee, Michigan for processing. (See Compl. ¶ 31.) Meserole receives almost all of its recyclable material from Filco, a waste collection company. (Id. ¶ 9.) In May 2006, the Michigan Department of Environmental Quality ("MDEQ") inspected some of the railcars in CSX's possession, loaded with Meserole's waste, and concluded that the materials in the railcars were not properly recyclable. (Id. ¶¶ 44-46.) As such, MDEQ refused to let CSX unload the railcars in Michigan for processing. (Id. ¶ 47.) To dispose of the material, CSX was required to pay $2 million in "reverse routing" and disposal charges. (Id. ¶¶ 50-51.) CSX subsequently brought suit against Meserole in the U.S. District Court for the Western District of Michigan. (Id. ¶ 55.) On July 10, 2009, CSX obtained a consent judgment against Meserole for $2 million. (Id.) CSX then registered the judgment in this court under 28 U.S.C. § 1963, and sought enforcement against Meserole. Judgment, CSX Transp., Inc. v. Meserole Street Recycling, No. 09-mc-494 (E.D.N.Y. July 27, 2009). Meserole has refused to satisfy the judgment. (Compl. ¶ 57.) CSX now brings this action against Filco, alleging that Filco is Meserole's alter ego, and therefore, that the court should "pierce the corporate veil" against Filco to satisfy the judgment obtained against Meserole. (Id. ¶ 61.)

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Although neither party contests the issue, the court feels obligated to raise the issue of subject matter jurisdiction in light of the technical complexities involved in enforcing a judgment in a subsequent proceeding. A party who possesses a prior judgment obtained in a federal

district court may attempt to enforce that judgment in another federal district court by registering the judgment with that court. 28 U.S.C. § 1963. Where the party possessing the judgment seeks to enforce it against a third party on a corporate identity theory, such as "piercing the corporate veil," such enforcement "is not itself an independent [ ] cause of action, but rather is a means of imposing liability on an underlying cause of action." Peacock v. Thomas, 516 U.S. 349 (1996) (dismissing attempt to enforce a judgment against a third party for lack of subject matter jurisdiction in the ERISA context). Because the enforcement action against the third party is not an independent cause of action, the party seeking to enforce the judgment against the third party must separately establish federal subject matter jurisdiction. See id. It may do so by either (a) demonstrating that the court has independent grounds for federal subject matter jurisdiction over the action, such as a federal question, see id. at 353-54, or diversity of citizenship, see C.F. Trust, Inc. v. First Flight Ltd., 306 F.3d 126, 133-34 (4th Cir. 2002); or (b) proving that the enforcement action is pursuant to the court's ancillary jurisdiction, see Peacock, 516 U.S. at 354-55. CSX does so here by sufficiently alleging that the court has diversity jurisdiction over its cause of action. CSX's Complaint asserts that its action is diverse, in that CSX is a citizen of Virginia and Florida, and that Filco is a citizen of New York, and the amount in controversy—here, $2 million—is more than $75,000. See 28 U.S.C. § 1332(a)(1). Therefore, although CSX's attempt to enforce its prior judgment against Filco is not itself an independent cause of action, the court otherwise has subject matter jurisdiction to decide this case.

### B. Enforcement of Registered Judgments

#### 1. Procedure

If the party seeking to enforce a registered judgment against a third party can establish federal jurisdiction, 28 U.S.C. § 1963 provides that the "judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be

3

enforced in like manner." This means that an out-of-district, registered judgment "ha[s] the same effect, and [is] entitled to the same protection, as if it had been entered in [the registered district] in the first instance." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 121 (2d Cir. 2007). Federal Rule of Civil Procedure 69(a)(1) governs the enforcement of judgments and provides that "[a] money judgment is enforced by a writ of execution . . . . The procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." To that end, the procedure for enforcing a registered judgment follows the state law of the district in which the judgment is registered. Karaha Bodas, 500 F.3d at 121.

Accordingly, a party's attempt to enforce a judgment registered in a federal district court in New York must comply with New York Civil Practice Law and Rules ("CPLR") § 5225. Cordius Trust v. Kummerfeld, 153 Fed. App'x 761, 762-63 (2d Cir. 2005) ("In New York, veil-piercing actions may be initiated as supplementary special proceedings under [CPLR] § 5225(b), rather than as plenary actions." (citing Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135 (1993))). CPLR § 5225(b) generally allows a party to enforce a judgment against a third party on a veil-piercing theory, "[u]pon a special proceeding commenced by the judgment creditor." N.Y. C.P.L.R. § 5225(b); WBP Cent. Assocs., LLC v. DeCola, 855 N.Y.S.2d 210, 211 (2d Dep't 2008) (citing Julien J. Studley, Inc. v. Lefrak, 48 N.Y.2d 954, 956 (1979)). Despite the statute's "upon a special proceeding" language, CPLR § 5225(b) is satisfied for purposes of enforcing a registered, federal district court judgment when the plaintiff proceeds by complaint in federal court. See Cordius, 153 F. App'x at 763 (concluding that where plaintiff filed complaint in federal court, plaintiff's "veil-piercing action was properly brought as a special proceeding under CPLR § 5225"); Mitchell v. Lyons Prof'l Servs., Inc., 727 F. Supp. 2d 120,

4

122-23 (E.D.N.Y. 2010) ("If a party mistakenly seeks relief by motion in an action when it should be by special proceeding, the Court may simply deem the motion a special proceeding, if it has jurisdiction over the parties." (citing Vincent C. Alexander, N.Y. C.P.L.R. § 103, Official Commentary, C103:3)). Consequently, although CSX seeks to enforce its prior federal judgment by way of complaint, rather than a "special proceeding," CSX has satisfied CPLR § 5225(b) for purposes of the instant action.

### 2. Substantive Law

CSX seeks to enforce its prior judgment against Meserole against Filco, on the theory that Filco is the alter ego of Meserole, and therefore, the court should "pierce the corporate veil."[1] (Compl. ¶ 61.) In New York, "[t]he concept of piercing the corporate veil is a limitation on the accepted principle that a corporation exists independently of its owners, as a separate legal entity." Morris, 82 N.Y.2d at 140. The court may pierce the corporate veil only where the plaintiff can prove "that: (1) the [defendant] owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Id. at 141. To prevail on a claim veil-piercing claim, the plaintiff must prove both prongs of this test. See id. Therefore, even if a plaintiff can prove that the third party indeed exercised complete domination over the debtor corporation, "[t]he party seeking to pierce the corporate veil must [also] establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." Id. at 142; see also Cordius, 153 F. App'x at 763-64 (vacating and remanding district

---

[1] Under New York law, "alter ego" and "veil piercing" claims are synonymous. See TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d 335, 339-40 (1998).

5

court's grant of writ of execution where factual record "ha[d] not yet demonstrated [how the third party] used his domination of [the judgment debtor] to cause [the alleged] wrongs").

This is a "heavy burden." TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d 335, 339 (1998). Where the defendant has a "legitimate business purpose" itself, the court should not disregard the corporate structure. See id. at 339-40 ("An inference of abuse does not arise from this record where a corporation was formed for legal purposes or is engaged in legitimate business."); Morris, 82 N.Y.2d at 144-45 (concluding that it would not pierce the defendant's corporate veil on tax fraud allegations where defendant had a legitimate business purpose and was not a "sham" corporation). Rather, the defendant must have "perverted the privilege of doing business in a corporate form," such as "misus[ing] the corporate form for its personal ends so as to commit a fraud or wrongdoing or avoid any of its obligations." TNS Holdings, 92 N.Y.S.2d at 340 (internal punctuation and citations omitted). Further, the alleged wrongdoing must have "resulted in the plaintiff's injury," Morris, 82 N.Y.2d at 141, such as the siphoning of assets from the defendant to another corporation for the purpose of avoiding liability to the plaintiff. See Peery v. United Capital Corp., 924 N.Y.S.2d 470, 473 (2d Dep't 2011). Where the challenged complaint lacks "this causative element—i.e., the use of domination to cause the injury. . . [it should] result[] in the dismissal of the corporate veil-piercing allegation." EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 513 (S.D.N.Y. May 19, 2005); see also White v. Nat'l Home Prot., Inc., No. 09 Civ. 4070 (SHS), 2010 WL 1706195, at *5 (S.D.N.Y. Apr. 21, 2010) (dismissing complaint where the "plaintiff makes no such allegation [of causation], contending solely that the corporation—as a corporation—perpetrated a fraud. Such allegations do not warrant veil piercing.").

Here, even assuming that CSX has sufficiently alleged that Filco exercised complete domination of Meserole, CSX's Complaint falls far short of alleging that Filco has so abused the corporate form with respect to its relationship with Meserole that the court should pierce the veil between the two to hold Filco liable for Meserole's judgment. See TNS Holdings, 92 N.Y.S.2d at 340. First, the Complaint itself identifies several of legitimate business purposes of Filco. See id. (concluding that courts should not pierce the corporate veil where the defendant corporation has a legitimate business purpose). For example, "Filco is a carting company which owns and operates a fleet of approximately forty trucks and which collects approximately one-thousand tons of waste materials from all five New York Boroughs," (Compl. ¶ 6), and that "Filco generates revenue by charging the business from which it collects waste," (id. ¶ 8). These allegations run contrary to notion that Filco was established for the purpose of avoiding Meserole's liabilities or that Filco was a "sham" business. See Morris, 82 N.Y.2d at 144-45.

Second, the Complaint wholly fails to allege that Filco has somehow perverted the corporate privilege by, for example, using its corporate body for its directors' personal ends or for the purpose of wrongfully avoiding liability. See TNS Holdings, 92 N.Y.S.2d at 340. Indeed, the Complaint alleges no facts to link Meserole's refusal to pay the judgment against it to Filco's conduct. Rather, the Complaint's only allegation regarding Filco's responsibility for Meserole's judgments—as opposed to the underlying breach of contract already litigated in the Western District of Michigan—is that "Meserole was Filco's alter ego and, consequently, Filco is liable for and must satisfy the Final Judgment." (Compl. ¶ 61.) This one conclusory statement begs the question of *why* Filco should be liable for Meserole's judgment, and cannot serve to replace factual allegations. The Complaint, as a whole, simply does not include factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 555 U.S.

7

at 555; see also Cordius Trust, 153 F. App'x at 763 (remanding case to district court where plaintiff did not establish facts, on summary judgment, as to how the alleged abuses of corporate form harmed the plaintiff); cf. De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (concluding that plaintiff's assertion, in a RICO action, that the subsidiary "caused" the corporate parent to ratify its bad acts was "devoid of any specific facts or circumstances supporting this assertion").

And third, the Complaint fails to allege any facts that suggest that the alleged corporate misconduct harmed CSX. Regarding the alleged misconduct, the Complaint only suggests that "Filco knew or should have known that the waste which Meserole loaded into the 194 Railcars was waste which had no resale value, and that it would have to incur significant costs in disposing of this waste," and that "Filco knew or should have known that the waste which Meserole loaded into the 194 Railcars had to be land filled or otherwise disposed of, and that it could not be recycled." (Compl. ¶¶ 34-35.) But these allegations do not relate to, nor does any other part of the Complaint describe, how this alleged misconduct resulted in Meserole's refusal to pay the judgment entered against it. These allegations may, perhaps, be used to establish that Filco should be responsible for the underlying action—the breach of contract arising out of the improper loading of the 194 railcars—but lacks the "causative element" describing how Filco's alleged ties to Meserole *caused* Meserole to refuse to honor the judgment against it. See EED Holdings, 228 F.R.D. at 513.

The court is troubled by the allegations in the Complaint that Meserole has refused to pay a federal judgment entered against it in another federal district court. Nonetheless, even if all of CSX's allegations are taken as true, see ATSI Commc'ns, 493 F.3d at 98, the Complaint does not contain sufficient factual allegations to state a claim that Filco should be held liable for

Meserole's judgment under a veil-piercing theory. See Iqbal, 129 S. Ct. at 1949. Accordingly, the court must grant Filco's motion and dismiss CSX's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is GRANTED. The Clerk of Court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      July 7, 2011

NICHOLAS G. GARAUFIS
United States District Judge